**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

FILED PSL

12 JAN 26 PM 4 22

BY _____ DEPUTY
HENN CO. DISTRICT
COURT ADMINISTRATOR

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**

|  |  |
|---|---|
| ERIN M. LAUGHLIN, On Behalf of Herself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| TARGET CORPORATION, | ) ) |
| Defendant. | ) ) ) ) |

Court File No. 27 CV 12-1986

<u>CLASS ACTION</u>

**CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

Plaintiff, Erin M. Laughlin ("Plaintiff" or "Laughlin"), brings this action on behalf of herself and all others similarly situated against Defendant, Target Corporation ("Target" or "Defendant"), and, in support thereof, alleges as follows:

<u>JURISDICTION AND VENUE</u>

1.     This Court has subject matter jurisdiction pursuant to Minn. Stat. § 484.01. The Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the privilege of conducting business and other activities within the state of Minnesota and, in fact, maintains regular and continuous business contacts within the state. In addition, Defendant maintains its headquarters and principal place of business in this District. This is a class action in which some of the members of the class of plaintiffs are citizens of states different from that of Target, however, the matter in controversy, exclusive of interest and costs, does not exceed the sum or value of $5,000,000.

96116

**EXHIBIT 1**

2.      Venue is proper in this Court pursuant to Minn. Stat. § 542.09 in that many of the acts and transactions giving rise to this action occurred in this county and because Defendant:

      (a)      maintains its principal place of business in this county;

      (b)      is authorized to conduct business in this county and has intentionally availed itself of the laws and markets within this county through the promotion, marketing, distribution and sale of its products in this county;

      (c)      does substantial business in this county; and

      (d)      is subject to personal jurisdiction in this county.

## NATURE OF ACTION

3.      Target markets and sells a type of men's and women's "toning" footwear known as TrimStep®, which Target claims is designed to "encourage muscle toning in the legs, improve posture, reduce stress on feet, knees and back and promote a healthy, active lifestyle." www.target.com (last visited October 27, 2011). Upon information and belief, Target contracts with a third party to manufacture its TrimStep® footwear and has the footwear specifically designed for distribution and sale under its private label.

4.      In or about 2009, certain popular and nationally recognized manufacturers of athletic shoes began heavily marketing "toning shoes" promising physiological benefits that ordinary athletic footwear supposedly does not possess.  For example, these companies claim their "toning shoes" cause increased muscle toning, calorie burning and health benefits just by wearing the shoes, and that by wearing the shoes for everyday activities, wearers would get the benefit of exercise without having to go to the gym.   Today, there are currently two types of "toning shoes" that are being marketed: "rocker bottom" shoes and "pod bottom" shoes.

5.      In an effort to capitalize on the very profitable "toning shoe" market, Target has copied other major athletic footwear manufacturers, and caused to be manufactured and marketed similar "rocker bottom" and "pod bottom" toning shoes.  In addition to relying on the

fact that consumers are aware of the representations made generally in the industry about the purported benefits of wearing "rocker bottom" and "pod bottom" toning shoes, Target has perpetuated these beliefs through its own marketing campaign. Target charges a price premium for these shoes over and above that of its non-toning sneakers.

6.      In an effort to convince consumers to purchase the shoes, Target has implemented an extensive and comprehensive nationwide marketing campaign, in which Target claims its TrimStep® footwear provides, to anyone who wears it, a variety of health benefits ordinary footwear cannot provide. First and foremost, the very name TrimStep® is meant to, and does, convey that wearing the shoes will provide health benefits. Consistent with this moniker, Target states on its website that its TrimStep® footwear "is designed to encourage muscle toning in the legs, improve posture, and reduce stress on feet, knees and back."

7.      Additionally, on each and every TrimStep® box, Target claims that its TrimStep® footwear: "1) helps promote muscle toning in the legs, 2) helps improve posture, and 3) helps relieve stress on your feet and joints."

8.      However, Target's TrimStep® footwear is not proven to provide any of these benefits. To the contrary, Target TrimStep® footwear may cause or exacerbate the very type of problems Target claims its footwear provides. Target's representations are false, misleading, and reasonably likely to deceive the public.

9.      Target's nationwide advertising campaign has been extensive and comprehensive, and it has spent significant sums of money to convey these deceptive messages to consumers throughout the United States. Target conveyed and continues to convey its deceptive claims about its TrimStep® footwear through a variety of media, including point of sale displays, the Internet and on the product's packaging. The only reason a consumer would buy TrimStep® footwear is to obtain the advertised benefits.

10.      Target's advertising and marketing campaign is designed to cause consumers to buy TrimStep® footwear as opposed to less expensive, non-toning footwear as a result of the deceptive health benefits message, and Target has succeeded.

3

11.     As a result of the misleading messages conveyed through its campaign, Target has sold footwear that does not perform as advertised, and can cause harm to people who wear it. Further, Target has been able to charge a price premium for its TrimStep® footwear over other non-toning footwear products, including other Target non-toning footwear products.

12.     Plaintiff brings this action on behalf of herself and other similarly situated consumers who purchased TrimStep® footwear in the United States, in order to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception Target has created in the minds of consumers, and obtain redress for those who have purchased Target TrimStep® footwear.

13.     Plaintiff alleges violations of: (1) the Minnesota Consumer Fraud Act; (2) the Minnesota Uniform Deceptive Trade Practices Act; and (3) the Minnesota Unlawful Trade Practices Act created by Target's marketing, including its advertising and packaging.

## PARTIES

14.     Plaintiff is, and at all times relevant to this action has been, a resident of Lemont, Illinois.  Plaintiff, thus, is a citizen of Illinois.  Laughlin was exposed to and saw Target's advertising claims on the box of the footwear, purchased TrimStep® rocker bottom footwear in or about the Spring of 2011 at the Target store located in Lemont, Illinois, paid approximately $40 for the footwear and, in reliance on these claims, suffered injury in fact and lost money as a result of the violations described herein.

15.     Target is incorporated in the State of Minnesota and, likewise, maintains its principal place of business and corporate headquarters in Minneapolis, Minnesota.  Target, thus, is a citizen of Minnesota.  Target operates general merchandise stores in the United States and offers household essentials, including pharmacy, beauty, personal care, baby care, cleaning, and paper products; hardlines consisting of electronics, video game hardware and software, music, movies, books, computer software, sporting goods, and toys; apparel and accessories comprising apparel for women, men, boys, girls, toddlers, infants, newborns, intimate apparel, jewelry,

4

accessories, and shoes; and home furnishings and decor products such as furniture, lighting, kitchenware, small appliances, home decor, bed and bath, home improvement, and automotive products; as well as seasonal merchandise, including patio furniture, and holiday decor. It also provides food and pet supplies consisting of dry grocery, dairy, frozen food, beverages, candy, snacks, deli, bakery, meat, produce, and pet supplies. Target sells its merchandise products under private-label, and exclusive licensed and designer brands. In addition, it provides in-store amenities. As of January 29, 2011, Target operated 1,750 stores in 49 states and the District of Columbia under Target and SuperTarget names. Further, it offers general merchandise products through its website, Target.com. Target distributes its merchandise through a network of distribution centers, as well as third parties and direct shipping.

16. From its corporate headquarters in Minnesota, Target created the false and deceptive advertising campaign at issue, and promotes, markets, distributes, and sells TrimStep® footwear to thousands of consumers throughout the United States. Along with retail distribution, Target sells the TrimStep® footwear on its e-commerce website and in its own retail stores.

## FACTUAL ALLEGATIONS

13. In the summer of 2009, a major athletic footwear company launched a huge marketing campaign and introduced a "toning shoe" with "rocker bottoms" in the United States. The rocker bottom shoe has a sole that curves outward from the bottom of the foot, so the bottom of the shoe is a convex, semi-circular shape. Up until this time, toning shoes were not heavily marketed. However, since 2009, sales of the rocker bottom shoe category enjoyed retail sales of about $145 million in 2009, up from just $17 million in 2008. In fact, in just the first four months of 2010, sales of rocker bottom shoes skyrocketed to $252 million. This company made numerous representations on the rocker bottom shoes' packaging and in other advertisements. The company stated its specific brand of rocker bottom shoes provided major health benefits, including reducing knee and joint stress, toning muscles, promoting weight-loss, improving posture, improving blood circulation, tightening abdominal muscles, strengthening and firming

back muscles, firming leg muscles and firming calf muscles.  This company promised that the shoes provided the benefits of exercising without the need to exercise, or exercise as much.

14.     In 2009, another major athletic footwear company launched another type of "toning shoe" using "balance pods" to create instability for the user.  The "balance ball technology" is a variant of the rocker bottom shoe.  That company claimed the "balance ball inspired technology with moving air creates micro-instability; toning and strengthening key leg muscles with every step."  The "air-filled" balance pods are essentially pieces of plastic/rubber, built in under the heel and forefoot of the shoes, which move to create "micro-instability" intended to alter the way the wearer stands and/or walks.  According to the company, the balance pods were designed to give the wearer the feeling of stepping on a mini balance ball, and were "designed to tone [] hamstrings, calves and butt more than regular sneakers."

15.     The company manufacturing and marketing the "toning shoes" with the "balance pod technology" likewise enjoyed great commercial success.  It is estimated that the company generated $500 million in revenue in the United States.

16.     In an effort to grab a piece of the very profitable "toning shoe" market, Target has copied the other major athletic footwear manufacturers and caused to be manufactured and marketed similar "rocker bottom" and "pod bottom" toning shoes, which it calls its TrimStep® footwear.

17.     The TrimStep® footwear advertised, marketed and sold by Target comes in two different varieties – rocker bottoms and pod bottoms.

18.     On its website, Target represents the following as the benefit of its TrimStep® footwear:

> TrimStep® footwear is designed to encourage muscle toning in the legs, improve posture, and reduce stress on feet, knees and back.

www.target.com (last visited October 27, 2011).

19.     The following is an example of one of Target's TrimStep® rocker bottom shoes:

6



20.   Target represents that TrimStep® rocker bottom shoes work as follows:

**ROCKER BOTTOM & trade Q & A**

**When should I wear my TrimStep® footwear?**

TrimStep® footwear is designed to be both stylish and comfortable, so you can wear them during your everyday routine. Whether you are going for a walk, to the supermarket, taking a trip to the mall, or doing anything else that has you on your feet (except jogging, running or playing sports), TrimStep® footwear is a great choice.

**What muscles does TrimStep® footwear help to tone?**

Every person's body is different, and may experience more or less benefit to different muscle groups than others. However, walking in TrimStep® footwear primarily activates the muscles of the legs and buttocks. You may notice after a long day in your TrimStep® footwear that your calves, thighs or glutes are a little bit sore... a clear sign that your muscles are working harder than normal.

**What muscles does TrimStep® footwear help to tone?**

TrimStep® footwear is designed to be both stylish and comfortable, so you can wear them during your everyday routine. Whether you are going for a walk, to the supermarket, taking a trip to the mall, or doing anything else that has you on your feet (except jogging, running or playing sports), TrimStep® footwear is a great choice.

**Is TrimStep® footwear appropriate for all exercise?**

Due to the slight instability created by the TrimStep® bottom, the footwear is intended to be

worn for normal walking activities, whether that be exercise walking, or walking associated with your regular daily routine. They should not be worn for running, or to play sports that involve side-to-side movement, such as tennis and basketball.

**How much do I need to walk in order to benefit from my TrimStep® footwear?**

Everyone's body is different, and therefore results may vary, but TrimStep® footwear is designed to activate the muscles of your legs more than walking in regular shoes. The instability induced by the unique pod bottom of the TrimStep® shoes can lead to alterations in muscle activation as the body gradually accommodates to walking in these shoes, so the more you walk in them, the greater the potential benefit. As is always the case, you should consult a physician before commencing any new exercise routine.

http://www.trimstepshoes.com/rocker_bottom.php (last visited June 16, 2011).

21.    The following is an example of the Target TrimStep® pod bottom shoe:



THE POD BOTTOM FEATURES XSPHERE&TRADE TECHNOLOGY



22.    Target represents that TrimStep® pod bottom shoes work as follows:

**POD BOTTOM & trade Q & A**

**When should I wear my TrimStep® footwear?**

TrimStep® footwear is designed to be both stylish and comfortable, so you can wear them during your everyday routine. Whether you are going for a walk, to the supermarket, taking a trip to the mall, or doing anything else that has you on your feet (except jogging, running or playing sports), Trim Step® footwear is a great choice.

**What muscles does TrimStep® footwear help to tone?**

Every person's body is different, and may experience more or less benefit to different muscle groups than others. However, walking in TrimStep® footwear primarily activates the muscles of the legs and buttocks. You may notice after a long day in your TrimStep® footwear that your calves, thighs or glutes are a little bit sore... a clear sign that your muscles are working harder than normal.

**What muscles does TrimStep® footwear help to tone?**

TrimStep® footwear is designed to be both stylish and comfortable, so you can wear them during your everyday routine. Whether you are going for a walk, to the supermarket, taking a trip to the mall, or doing anything else that has you on your feet (except jogging, running or playing sports), Trim Step® footwear is a great choice.

**Is TrimStep® footwear appropriate for all exercise?**

Due to the slight instability created by the TrimStep® bottom, the footwear is intended to be worn for normal walking activities, whether that be exercise walking or walking associated with your regular daily routine. They should not be worn for running, or to play sports that involve side-to-side movement, such as tennis and basketball.

**How much do I need to walk in order to benefit from my TrimStep® footwear?**

Everyone's body is different, and therefore results may vary, but TrimStep® footwear is designed to activate the muscles of your legs more than walking in regular shoes. The instability induced by the unique pod bottom of the TrimStep® shoes can lead to alterations in muscle activation as the body gradually accommodates to walking in these shoes, so the more you walk in them, the greater the potential benefit. As is always the case, you should consult a physician before commencing any new exercise routine.

http://www.trimstepshoes.com/pod_bottom.php (last visited June 16, 2011).

23.     Target markets its pod bottom shoes as having XSphere® Advanced Instability Technology.

24.     Throughout the relevant time period, Target has marketed TrimStep® footwear using similar and deceptive advertising and packaging. Unlike most retail footwear stores, Target sells all of its footwear by having displays of its entire inventory available for its customers to choose the appropriate size and purchase the footwear. Therefore, each and every purchaser of TrimStep® footwear is exposed to the packaging at the time of purchase.

25.     Each and every box top of TrimStep® footwear also includes the trademark "Walk it Off™."



26.    On the inside of each and every box top of TrimStep® footwear, there is a picture of a woman's silhouette walking, with the words "buttocks, thighs and calves," with corresponding circles to the appropriate areas of the body.  Next to the silhouette the following appears:

- Helps promote muscle toning in the legs
- Helps improve your posture
- Helps relieve stress on your feet and joints

27.    The inside of the box also contains the wording, "featuring XZorb® Advanced cushioning technology."

28.    In addition, on the inside cover of each and every TrimStep® box top is the following:

### BENEFITS

TrimStep® footwear is designed to cause the muscles in your legs to work a little bit harder when you walk in them, relative to a typical walking shoe.  This increased muscle activation has been shown to encourage toning of the muscles in the legs, buttocks and abs.  The instability caused by the curved bottom of the TrimStep® shoes also encourages you to stand straighter and pull your shoulders back to properly balance, thereby helping to improve your posture.

## Q & A

**When should I wear my TrimStep® footwear?**

TrimStep® footwear is designed to be both stylish and comfortable, so you can wear them during your everyday routine. Whether you are going for a walk, to the supermarket, taking a trip to the mall, or doing anything else that has you on your feet (except jogging, running or playing sports), TrimStep® footwear is a great choice.

**What muscles does TrimStep® footwear help to tone?**

Every person's body is different, and may experience more or less benefit to different muscle groups than others. However, walking in TrimStep® footwear primarily activates the muscles of the legs and buttocks. You may notice after a long day in your TrimStep® footwear that your calves, thighs or glutes are a little bit sore…a clear sign that your muscles are working harder than normal.

**Is TrimStep® appropriate for all exercise?**

Due to the slight instability created by the TrimStep® bottom, the footwear is intended to be worn for normal activities, whether that be exercise walking or walking associated with your regular daily routine. They should not be worn for running, or to play sports that involve side-to-side movement, such as tennis or basketball.

**How much do I need to walk in order to benefit from my TrimStep® footwear?**

Everyone's body is different, and therefore results may vary, but TrimStep® footwear is designed to activate the muscles of your legs more than walking in regular shoes. The instability induced by the curved bottom of the TrimStep® shoes can lead to alterations in muscle activation as the body gradually accommodates to walking in these shoes, so the more you walk in them, the greater the potential benefit. As is always the case, you should consult a physician before commencing any new exercise routine.

29.     The TrimStep® print advertisements each contain substantially similar messages about the ability of TrimStep® to provide health benefits that regular footwear does not provide.

30.     Target also repeats the TrimStep® misrepresentations on its websites: www.trimstepshoes.com and www.target.com. These websites are available to the general public and Target's advertisements in other media promote these websites.

12

31.     Based upon the purported major health benefits conveyed in its marketing and advertising, Target is able to price TrimStep® footwear at a premium to non-toning footwear. Through the uniform deceptive and misleading marketing campaign, Target leads consumers to believe that the proven health benefits justify the price differential.

32.     However, clinical evidence that has been subjected to scientific peer-review suggests that, not only are Target's claims regarding TrimStep® footwear false and deceptive, but that wearing TrimStep® footwear as directed could result in harm to the wearer. For example, one published study conducted to determine the effectiveness of unstable shoe construction (rocker bottom shoes) on reducing pain and increasing balance in persons with knee osteoarthritis found that there was no significant difference between the test group that wore an unstable shoe construction and the control group in either pain reduction or increased balance. *"Unstable Shoe Construction and Reduction of Pain in Osteoarthritis Patients,"* Nigg, Benno, *et al.*, Medicine & Science in Sports & Exercise (2006).

33.     As to Target's claim that wearing TrimStep® footwear reduces joint stress, another published study testing unstable shoe construction on joints did not find evidence to support the hypothesis that unstable shoe construction reduced joint loading; rather, there was no significant difference in the nine joint impulses measured between the group that wore unstable shoes and the control group that wore a regular running shoe. *"Effect of Unstable Shoe Construction on Lower Extremity Gait Characteristics."* Nigg, Benno, *et al.*, Clinical Biomechanics (2005).

34.     As to Target's claim that wearing TrimStep® footwear encourages muscle toning, in July 2010, the American Council on Exercise ("ACE") released the results of two studies conducted by exercise scientists from the University of Wisconsin, La Crosse, comparing regular athletic shoes to rocker bottom toning shoes. According to the ACE Report:

> [N]one of the toning shoes showed statistically significant increases in either exercise response or muscle activation during any of the treadmill trials. There is simply no evidence to support the claims that these shoes will help wearers exercise more intensely, burn more calories or improve muscle strength.

## Minnesota's Substantive Laws Apply To The Proposed Class

35.     Minnesota's substantive laws apply to the Class proposed herein for a multitude of reasons.  Minnesota's substantive laws may be applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  Minnesota has significant contact, or a significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of Minnesota state law is not arbitrary or unfair.

36.     Defendant's headquarters and principal place of business are located in Minnesota.  Defendant also owns property and conducts substantial business in Minnesota and, therefore, Minnesota has a significant interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in Minnesota and avail itself of Minnesota's laws renders the application of Minnesota law to the claims herein constitutionally permissible.

37.     A substantial number of Class members resides in Minnesota and purchased the TrimStep® footwear in or from Minnesota.

38.     Minnesota also is the state from which Defendant's misconduct emanated. This conduct similarly injured and affected Plaintiff and Class members.  For instance, Target's marketing and advertising efforts (including product labeling) were created in and orchestrated from the location of its present headquarters in Minnesota.

39.     The application of Minnesota's laws to the Class is also appropriate under Minnesota's choice of law rules because Minnesota has significant contacts to the claims of the Plaintiff and the Class, and Minnesota has a greater interest in applying its laws here than any other interested state.

14

## CLASS DEFINITION AND ALLEGATIONS

40.     Plaintiff brings this action on behalf of herself and members of a Class, pursuant

to Minnesota Rules of Civil Procedure 23.01-23.02, defined as:

> All persons who purchased TrimStep® branded footwear in the United States. Excluded from the Class are Defendant and its officers, directors and employees and those who purchased TrimStep® branded footwear for the purpose of resale or who claim personal injury.

41.     *Numerosity.* The members of the Class are so numerous that their individual

joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the

proposed Class contains thousands of members.  The precise number of Class members is

unknown to Plaintiff.  The true number of Class members is known by the Defendant, however,

and thus may be notified of the pendency of this action by First Class mail, electronic mail,

and/or by published notice.

42.     *Existence and Predominance of Common Questions of Law and Fact.*

Common questions of law and fact exist as to all members of the Class and predominate over

any questions affecting only individual Class members.  These common legal and factual

questions include, but are not limited to, the following:

(a)     whether Target had adequate substantiation for its claims prior to making

them;

(b)     whether the claims discussed above are true, misleading, or are reasonably

likely to deceive;

(c)     whether Target's alleged conduct violates public policy;

(d)     whether the alleged conduct constitutes violations of the laws asserted

herein;

(e)     whether Target engaged in false or misleading advertising;

(f)     whether Plaintiff and Class members have sustained monetary loss and the

proper measure of that loss;

(g)     whether Target was unjustly enriched as a result of its conduct;

      (h)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

43.    *Typicality*. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all Class members have been injured by the same wrongful practices in which Defendant has engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members, and are based on the same legal theories.

44.    *Adequacy of Representation*. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

45.    *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46.    Unless the Class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE MINNESOTA CONSUMER FRAUD ACT**
**(ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS)**

47.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

48.     Minn. Stat. § 325F.69, subdivision 1 (2011) provides:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in sect. 325F.70.

49.     Defendant sold merchandise in the form of TrimStep® footwear to Plaintiff and Class members.

50.     Defendant's business practices, in licensing, advertising, marketing and selling its TrimStep® footwear as having the ability to improve posture, reduce stress on feet, knees and back and encourage muscle toning, constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

51.     Defendant's business practices, in licensing, advertising, marketing and selling its TrimStep® footwear while concealing, failing to disclose, suppressing or omitting material information, constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

52.     Defendant continues to affirmatively misrepresent and conceal from the consuming public the truth about its TrimStep® footwear, namely that the footwear does not improve posture, reduce stress on feet, knees and back and/or encourage muscle toning.  These omissions and misrepresentations constitute the use of fraud, false pretense, false promises,

17

misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

53.     Defendant knew or should have known that its TrimStep® footwear fails to improve posture, reduce stress on feet, knees and back and/or encourage muscle toning. Defendant suppresses and fails to disclose these material facts.  The fact that Defendant's TrimStep® footwear fails to improve posture, reduce stress on feet, knees and back and/or encourage muscle toning is a material fact, the omission of which has the tendency or capacity or is likely to mislead or deceive Plaintiff and Class members, and is a fact which could not reasonably be known by Plaintiff and Class members.  These omissions constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

54.     In connection with the licensing, advertising, marketing and sale of its TrimStep® footwear, Defendant made the material omissions and misrepresentations set forth in this Complaint on the materials enclosed with or attached to the footwear, in print advertisements, on websites, and on other promotional materials disseminated by or on behalf of Defendant, in Minnesota.

55.     Defendant's omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decisions or conduct of purchasers, including Plaintiff and Class members, regarding whether or not to purchase Defendant's TrimStep® footwear.

56.     Had Plaintiff and the Class known that Defendant's TrimStep® footwear failed to improve posture, reduce stress on feet, knees and back and/or encourage muscle toning, they would not have purchased the TrimStep® footwear.

57.     Defendant fraudulently, negligently, recklessly and/or intentionally concealed and/or failed to disclose the true characteristics of its footwear for the purpose of inducing Plaintiff and the Class to rely thereon, and Plaintiff and the Class justifiably relied, to their detriment upon the truth and completeness of Defendant's representations about its TrimStep®

footwear. Plaintiff and the Class relied on Defendant to disclose all material facts and not omit

any material information regarding its TrimStep® footwear. That Plaintiff and the Class

members were deceived is evidenced by the fact that Plaintiff and Class members purchased

Defendant's TrimStep® footwear. Had they known the truth, Plaintiff and the Class would not

have bought Defendant's TrimStep® footwear. Defendant's fraudulent and deceptive practice of

licensing, advertising, marketing and selling its TrimStep® footwear repeatedly occurred in

Defendant's trade or business and was capable of deceiving a substantial portion of the

purchasing public.

58.     As a direct and proximate cause of Defendant's false and deceptive

misrepresentations and omissions, Plaintiff has suffered actual injuries in that she would not have

spent her money on a product that fails to perform as advertised. To be sure, Plaintiff has

suffered injury insofar as she would not have paid the premium prices charged by Defendant for

its TrimStep® footwear.

59.     Separate from, and in addition to, actual damages, Plaintiff and Class members'

expectations were frustrated as a result of Defendant's omissions and misrepresentations, and

Plaintiff and Class members did not receive what they expected to receive, which injury

constitutes a loss. Plaintiff and Class members are thus entitled to recover the difference

between the actual value of the TrimStep® footwear and the value of regular athletic footwear

that they would have purchased absent Defendant's misrepresentations about the footwear –

specifically, the misrepresentations that TrimStep® footwear improves posture, reduces stress on

feet, knees and back and/or encourages muscle toning.

60.     As a result of Defendant's unlawful conduct, Plaintiff and Class members were

injured and suffered damages. Plaintiff and Class members are entitled to recover their actual

damages, and costs and disbursements, including costs of investigation and reasonable attorneys'

fees, as well as injunctive relief and other equitable relief, including restitution, as determined by

the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3 a. and

325F.69.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF THE MINNESOTA UNIFORM
## DECEPTIVE TRADE PRACTICE ACT
## (ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS)

61.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

62.     Minn. Stat. § 325D.44 subdivision 1 (2011) provides, in part, as follows:

Subdivision 1.  A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

...

(5)     represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities [qualities?] that they do not have...;

...

(13)    engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

63.     Defendant's business practices, in licensing, advertising, marketing and selling its TrimStep® footwear, and in misrepresenting material facts, including that its TrimStep® footwear improves posture, reduces stress on feet, knees and back and/or encourages muscle toning, constitute multiple, separate violations of Minn. Stat. § 325D.44, subd. 1 (5), and (13), including:

(a)     Falsely representing that its TrimStep® footwear has the characteristics, uses, benefits or quantities of being able to improve posture, reduce stress on feet, knees and back, and/or encourage muscle toning;

(b)     Creating the likelihood of confusion or misunderstanding among consumers about the nature and quality of its TrimStep® footwear, including that the footwear improves posture, reduces stress on feet, knees and back and/or encourages muscle toning, when in fact, it cannot.

64.     Defendant's business practices, in licensing, advertising, marketing and selling its TrimStep® footwear while misrepresenting material facts, including that its TrimStep® footwear improves posture, reduces stress on feet, knees and back, and/or encourages muscle toning constitute multiple, separate violations of Minn. Stat. § 325D.44, subd. 1 (5), and (13).

65.     Defendant engaged in the above conduct in the course of its business.

66.     As a result of Defendant's unlawful conduct, Plaintiff and Class members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Sat. §§ 8.31, subd. 1 and 3a. and 325D.45.

### THIRD CLAIM FOR RELIEF
### VIOLATIONS OF THE MINNESOTA UNLAWFUL TRADE PRACTICES ACT
### (ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS)

67.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

68.     Minn. Stat. § 325D.13 provides, in part, as follows:

> No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise.

69.     Defendant knowingly misrepresented and concealed the true quality of its TrimStep® footwear in connection with the sale of that merchandise.

70.     Defendant knowingly misrepresented that its TrimStep® footwear improves posture, reduces stress on feet, knees and back, and/or encourages muscle toning, as stated herein.

71.     Defendant's omissions and misrepresentations had the tendency or capacity to deceive or mislead (and did deceive and mislead) Plaintiff, Class members and a substantial segment of consumers.

72.     Defendant's omissions and misrepresentations were material because they related to facts that would naturally affect the conduct of purchasers and that a reasonable person, including Plaintiff and Class members, would have considered important in deciding whether to purchase Defendant's TrimStep® footwear.

73.     Defendant caused its TrimStep® footwear to enter into interstate commerce.

74.     As a result of Defendant's unlawful conduct, Plaintiff and Class members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a. and 325D.15.

**FOURTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS)**

75.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

76.     Plaintiff asserts this claim in the alternative.

77.     By the acts and conduct described herein, Plaintiff and members of the Class conferred a benefit on Target by purchasing shoes, certain proceeds of which went to and were retained by Target.

78.     By the acts and conduct described herein, Target knowingly accepted and retained the benefit of the money paid by Class members.

79.     Target's retention of the money is inequitable and unjust for the reasons stated in this Complaint.

**RELIEF REQUESTED**

WHEREFORE, based upon the foregoing allegations, Plaintiff respectfully requests that the Court grant her and all others similarly situated equitable and legal relief against Defendant, as follows:

22

(a)     An Order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b)     A declaration that Defendant is financially responsible for notifying all Class members of the fraudulent misrepresentations and omissions concerning Class members' purchase of Defendant's TrimStep® footwear;

(c)     A declaration that Defendant's conduct violates Minnesota law, including Minn. Stat. § 325F.69, Minn. Stat. § 325D.44 and Minn. Stat. §325D.13;

(d)     An Order enjoining Defendant from further deceptive advertising, marketing, distribution, and sales practices with respect to its TrimStep® footwear;

(e)     An award of reasonable attorneys' fees and costs, including the costs of investigation and such other equitable relief as determined by the Court, as allowed by law;

(f)     An award of pre-judgment and post-judgment interest, as provided by law;

(g)     An award of damages to be proved at trial; and

(h)     Such other further relief as the Court finds just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Dated this 26th day of January, 2012.                HEINS MILLS & OLSON, P.L.C.

Renae D. Steiner (No. 222392)
310 Clifton Avenue
Minneapolis, MN  55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
rsteiner@heinsmills.com

23

James C. Shah
Jayne A. Goldstein
SHEPHERD FINKELMAN
MILLER & SHAH LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883

Janine L. Pollack
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

Elaine A. Ryan
Patricia N. Syverson
BONNETT, FAIRBORN,
FRIEDMAN & BALINT, P.C.
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

Todd D. Carpenter
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
600 W. Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 756-6978
Facsimile: (602) 274-1199

Timothy G. Blood
Thomas J. O'Reardon, II
BLOOD HURST & O'REARDON,
LLP
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101

John F. Edgar
Anthony E. LaCroix
EDGAR LAW FIRM, LLC
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: (816) 399-5158
Facsimile: (816) 531-3322

Adam J. Levitt
WOLF HALDENSTEIN
ADLER FREEMAN & HERZ, LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001

## ACKNOWLEDGMENT

Renae D. Steiner hereby acknowledges that costs, disbursements, witness fees, and reasonable attorney's fees may be awarded, pursuant to Minnesota Statutes § 549.211, for a party acting in bad faith or asserting a frivolous claim.

Renae D. Steiner

**STATE OF MINNESOTA**                           **DISTRICT COURT**

**COUNTY OF HENNEPIN**                     **FOURTH JUDICIAL DISTRICT**

ERIN M. LAUGHLIN, On Behalf of )        Court File No._____
Herself and All Others Similarly Situated, )

           Plaintiff,        )        CLASS ACTION

           v.           )        SUMMONS

TARGET CORPORATION, )

           Defendant.     )        JURY TRIAL DEMANDED

THIS SUMMONS IS DIRECTED TO DEFENDANT TARGET CORPORATION:

You are hereby summoned and required to serve upon the undersigned attorney an Answer to the Complaint, which is herewith served upon you, within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Dated this 27th day of January, 2012.     HEINS MILLS & OLSON, P.L.C.

                               Renae Steiner

                               Renae D. Steiner (No. 222392)
                               310 Clifton Avenue
                               Minneapolis, MN 55403
                               Telephone: (612) 338-4605
                               Facsimile: (612) 338-4692
                               rsteiner@heinsmills.com

**EXHIBIT 2**