UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ERIN M. LAUGHLIN, On Behalf of Herself
and All Others Similarly Situated,

       Plaintiff,

v.                                                                                  Civil No. 12-489 (JNE/JSM)
                                                                     ORDER
TARGET CORPROATION,

       Defendant.

       This is a putative class action brought by Plaintiff Erin M. Laughlin ("Laughlin") against Defendant Target Corporation ("Target"), alleging violations of the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.69, the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44, and the Minnesota Unlawful Trade Practices Act ("MUTPA"), Minn. Stat. § 325D.13.  Now before the Court is Target's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

       In the spring of 2011, Laughlin, an Illinois resident, purchased a pair of TrimStep® shoes from a Target store in Illinois.  The TrimStep® shoebox contained statements indicating that the shoes could provide various health benefits to the user, including statements that the shoes could help promote muscle toning in the legs, help improve the user's posture, and help relieve stress on the user's feet and joints.  Based on those statements, Laughlin paid approximately $40 and purchased a pair of the shoes.

       Other manufacturers have also created and marketed similar "toning" shoes, claiming that their shoes provide various health benefits.  Several scientific studies have been performed, analyzing whether those other brands of "toning" shoes confer the beneficial effects that they

1

claim to provide. Those studies did not examine TrimStep® shoes. According to Laughlin, the results of those studies have been that the shoes do not provide the advertised benefits, and in fact, may actually cause harm to the user. Based on the studies, Laughlin alleges that Target's advertisements of its TrimStep® shoes, which she asserts are similar to the other "toning" shoes promoted by other manufacturers, are false. She claims that she suffered an economic injury because she purchased a product she otherwise would not have purchased, or else paid more for the shoes than she would have paid for other shoes.

## II.   DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). Although a pleading is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court "generally may not consider materials outside the pleadings," but "[i]t may . . . consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 982 (8th Cir.2008) (quoting *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999)).

Target argues that the Complaint fails to state a claim for several reasons.  First, Target asserts that the statements on the shoe box are nonactionable puffery.  Second, Target argues that the Complaint fails to allege that Laughlin suffered any injury.  Third, Target argues that the Complaint fails to allege causation.  Fourth, Target contends that it no longer sells the TrimStep® shoes, and so Laughlin may not seek injunctive relief.  Finally, Target argues that Illinois law should govern the dispute, and because Laughlin asserted only Minnesota state law claims, the Complaint in its entirety should be dismissed.

**A.  Puffery**

The Complaint alleges that the boxes for TrimStep® shoes contain the following statements: (1) "help promote muscle toning in the legs," (2) "help improve your posture," and (3) "help relieve stress on your feet and joints."  According to the Complaint, the boxes also contain statements such as:

- "Every person's body is different, and may experience more or less benefit to different muscle groups than others.  However, walking in TrimStep® footwear primarily activates the muscles of the legs and buttocks.  You may notice after a long day in your TrimStep® footwear that your calves, thighs or glutes are a little bit sore . . . a clear sign that your muscles are working harder than normal."

- "Everyone's body is different, and therefore results may vary, but TrimStep® footwear is designed to activate the muscles of your legs more than walking in regular shoes."

Laughlin asserts that the statements are literally false factual claims, or at the very least, are factual claims that are misleading in context.  Target argues that the statements are mere puffery, and thus are nonactionable.

"Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority."  *Am. Italian Pasta Co. v. New World Pasta*

*Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004).  Puffery is not actionable.  *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).  "However, false descriptions of specific or absolute characteristics of a product and specific, measurable claims of product superiority based on product testing are not puffery and are actionable."  *Id.*; *see also Am. Italian Pasta Co.*, 371 F.3d at 391 ("To be actionable, the statement must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" (citation omitted)).

Target argues that there is no specifically defined benchmark from which to judge the allegedly false statements on the TrimStep® shoebox, and that the statements to not provide a quantifiable improvement in muscle tone, posture, or stress relief.  Further, Target asserts that no reasonable person would rely on the statements that the shoes provide any physical benefits.  For support, Target points to other "disclaiming" and "noncommittal" language appearing on the shoebox—language also identified in the Complaint—such as "[e]very person's body is different, and may experience more or less benefit to different muscle groups that others," and "[e]veryone's body is different, and therefore results may vary."  Thus, Target contends, the statements are nonactionable puffery.

The statements that TrimStep® shoes "help promote muscle toning in the legs," "help improve your posture," and "help relieve stress on your feet and joints" are not "exaggerated statements of bluster or boast upon which no reasonable consumer would rely," nor are they "vague or highly subjective claims of product superiority."  *Am. Italian Pasta Co.*, 371 F.3d at 390-91.  The statements on the TrimStep® shoebox claim that the footwear provides specific health benefits—such as increased muscle toning in the legs (specifically in the calves, thighs, and glutes), improved posture, and reduced stress in the feet and joints.  The shoebox also states

4

that TrimStep® footwear "activate[s] the muscles of your legs more than walking in regular shoes."  Even in context, these statements are descriptions of characteristics of the product that are specific and measureable claims, "capable of being proved false."  *Id.* at 391.  In fact, the three scientific studies relied upon in the Complaint purport to do just that—they examined the muscular, postural, and/or joint-related effects of "toning" shoes as compared to regular athletic shoes.  Although these studies did not examine TrimStep® shoes, a study could be likewise be designed and conducted to prove that the statements on the TrimStep® shoebox are either true or false.  The statements are not puffery.[1]

**B. Injury**

The Complaint alleges that in reliance on the statements on the TrimStep® shoebox, Laughlin purchased a pair of TrimStep® shoes for approximately $40.  "Had [she] known that the shoes did not improve posture, reduce stress, and/or encourage muscle toning, she would not have purchased the TrimStep® footwear."  Compl. ¶ 56.  She claims that she lost money as a result of the allegedly false advertising—she either would not have purchased shoes at all, or would not have paid the premium price for the TrimStep® shoes.  The injury claimed is the difference between the amount paid for the TrimStep® shoes and the regular athletic footwear Laughlin would have purchased if not for the allegedly false advertising.

Citing *Carey v. Select Comfort Corp.*, No. 27CV 04-015451, 2006 WL 871619, at *3 (Minn. Dist. Ct. Jan. 30, 2006), Target asserts that Laughlin must allege an injury other than that she "paid-too-much-for-it" or that she "would not have acted in the same way" had she known

---

[1] Target also argues that the statements are not false or misleading, because (a) the scientific studies did not examine TrimStep® shoes, (b) the studies actually showed that other "toning" footwear did, in fact, provide the claimed health benefits, and (c) the TrimStep® shoeboxes did not make specific promises, but rather contained disclaiming language.  These are fact issues appropriate for consideration in a motion for summary judgment, not a motion to dismiss.

the truth. Target contends that such allegations do not constitute legally cognizable damages. *Carey*, however, is factually dissimilar from the case at hand. The plaintiff in *Carey* asserted consumer fraud claims alleging that the bed he purchased contained a design defect that made the bed susceptible to mold growth in the future, although it was undisputed that mold had not actually grown on the plaintiff's bed. *Id.* at *1. The Minnesota state district court dismissed the complaint because damages based on a product's propensity to fail, without actual failure or "actual economic loss," were too speculative and not legally cognizable damages. *Id.* at *2-3.

Laughlin, however, is not asserting that the TrimStep® shoes have merely a propensity to fail in the future—she is asserting that the product already fails to perform as advertised. When a complaint alleges misrepresentation or fraud that induces a consumer to purchase a product, Minnesota courts have recognized that allegations of damages similar to Laughlin's establish a legally sufficient claim for relief. In *Weigand v. Walser Automotive Groups, Inc.*, 683 N.W.2d 807 (Minn. 2004), the Minnesota Supreme Court reversed the dismissal of the plaintiff's consumer fraud claims. The plaintiff alleged that the defendant made false representations that induced him to purchase a service contract and credit insurance, and that he would not have purchased the service contract and credit insurance if not for the misrepresentations. *Id.* at 809. The court stated:

> In the case before us, Wiegand alleges in his complaint that a Walser representative falsely told him and potentially at least 100 other consumers that he was required to purchase a $1,500 service contract in order to obtain financing, and that he did so. Wiegand also alleges that a Walser representative falsely told him and potentially others that they had to purchase a credit insurance policy in order to obtain financing, and that he did so. Wiegand alleges that he agreed to purchase the service contract and credit insurance based on the misrepresentations of Walser's representative. In sum, the complaint alleges that misrepresentations were made and consumers were damaged thereby. Wiegand's complaint, therefore, meets the requirements . . . to establish a legally sufficient claim for relief.

*Id.* at 812.  In *Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178 (8th Cir. 2011), the plaintiffs brought claims against the sellers of hunting clothing, alleging that the defendants misrepresented that the clothing eliminated human odors.  The plaintiffs alleged that had they known that the clothing failed to effectively eliminate all human odors, they would not have purchased the clothing, that they paid a significant premium for the odor-eliminating clothing, and that they therefore suffered injury.  After reversing the district court's imposition of a permanent injunction, the Eighth Circuit Court of Appeals remanded for a determination of the plaintiffs' individual claims for damages. *Id.* at 1187.  The Eighth Circuit's remand in *Buetow* suggests that the plaintiffs' claims that they paid too much for the falsely advertised products, and would not have paid the premium prices but for the false statements, are legally cognizable damages.  Other cases, too, have found that a plaintiff who alleges that he would have either negotiated a lower price or declined to purchase a product if not for the seller's misrepresentations alleges a sufficient injury.  *See, e.g.*, *Sutton v. Viking Oldsmobile Nissan, Inc.*, No. C2-99-1843, 2001 WL 856250, at *2 (Minn. Ct. App. July 31, 2001) (holding that the plaintiff's deposition testimony that if not for the misrepresentation, he would have negotiated the price or declined to purchase the service and insurance contracts created a genuine issue of material fact under his consumer fraud claim).

 Laughlin's Complaint asserts that she would not have purchased the TrimStep® footwear had she known that the shoes did not provide the advertised benefits, that she paid an increased price for the shoes, and that she therefore suffered injury.  In claims

involving allegations of false or misleading advertisements that induce a consumer to make a purchase, these appear to be legally cognizable damages.[2]

**C.  Causation**

Target argues that the complaint fails to allege a causal nexus between the allegedly false statements and Laughlin's claimed injuries.  Target points to numerous extraneous factual allegations in the Complaint, such as allegations relating to TrimStep® advertisements to which Laughlin was not exposed and on which she did not rely (i.e., advertising appearing in places other than on the TrimStep® shoebox), advertisements related to non-TrimStep® footwear, and scientific studies that did not examine TrimStep® shoes.  Target argues that if these irrelevant allegations were removed from the Complaint, the Complaint would consist entirely of general and conclusory allegations that fail to connect the advertising Laughlin saw with her alleged injury.

Even stripping away any irrelevant factual allegations, however, the Complaint still states a claim under the Minnesota consumer fraud statutes.  The Complaint alleges that Target markets and sells TrimStep® shoes, that the TrimStep® shoeboxes contain statements indicating that the shoes provide certain benefits, that the shoes do not actually provide those benefits, that Laughlin was exposed to, saw and relied upon those statements when she purchased the TrimStep® shoes, that she would not have purchased the shoes but for the allegedly false statements, and that she suffered injury by purchasing shoes she would not have otherwise purchased.  Laughlin identifies the specific statements that she alleges are false, and supports her allegations of falsity with three

---

[2]   Because Laughlin has sufficiently alleged injury, Target's argument that she cannot rely upon the Minnesota consumer fraud statutes is without merit.

scientific studies that examined the beneficial effects, or alleged lack thereof, provided by other similar "toning" shoes. These allegations are sufficient to state a claim.[3]

**D.  Target's Discontinued Sales of TrimStep® Shoes**

Target also states that because it no longer sells TrimStep® shoes, there would be no public benefit in obtaining injunctive relief. A plaintiff must demonstrate a public interest in order to state a claim under the Private Attorney General Statute.[4] *See Ly v. Nystrom*, 615 N.W.2d 302, 313-14 (Minn. 2000). A cause of action does not benefit the public where it is based on "a single one-on-one transaction in which the fraudulent misrepresentation . . . was made only to [the injured party]." *Id.* at 314. But a claim prosecuted under the Private Attorney General Statute does benefit the public if the misrepresentation was presented to the public at large. *See Collins v. Minn. Sch. of Bus.*, 655 N.W.2d 320, 330 (Minn. 2003). Because Target's representations were made to the public at large, and were not part of only a "single one-on-one transaction," Laughlin sufficiently alleges a public benefit.

Target's argument regarding its voluntarily cessation of the sale of TrimStep® shoes really amounts to an argument that Laughlin's claims for injunctive relief are moot. A defendant's voluntary action moots a controversy only if the defendant makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203

---

[3]   Whether the scientific studies that examined non-TrimStep® shoes actually prove that the statements contained on the TrimStep® shoebox are false is a fact issue for summary judgment. While Laughlin must *plead* fraud with particularity, she need not *prove* it at the 12(b)(6) stage.

[4]   The Minnesota Private Attorney General Statute, Minn. Stat. § 8.31, subdiv. 3a, applies to claims under the MUTPA and the MCFA. The MUTPA, however, also provides its own authorization for a plaintiff to bring suit. Minn. Stat. § 325D.15.

(1968); *see also Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012) ("Mere voluntary cessation of a challenged action does not moot a case. Rather, a case becomes moot 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' The burden of showing that the challenged conduct is unlikely to recur rests on the party asserting mootness." (citation omitted)). Target's only evidence regarding its discontinuation of the sale of TrimStep® shoes is an affidavit in which the affiant states that Target stopped selling the shoes. There is nothing in the record indicating why Target stopped selling the shoes, or that Target will not resume selling them again in the future. Target has not made it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Laughlin's claim for injunctive relief is not moot, and the Complaint sufficiently alleges a public benefit.

**E. Choice of Law**

Target contends that Illinois—not Minnesota—law applies to the dispute. Although Target is a Minnesota corporation, Laughlin is an Illinois resident who purchased the TrimStep® shoes in a store in Illinois, and thus suffered injury in Illinois. Because the Complaint states only Minnesota state law claims, Target contends that the Complaint should be dismissed in its entirety.

Target, however, fails to identify any conflict between the consumer protection laws of Illinois and Minnesota. "A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Id.*; *see also Nodak Mut. Ins. Co. v. Am.*

10

*Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000) ("Before a choice-of-law analysis can be applied, a court must determine that a conflict exists between the laws of two forums."). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." *Nodak Mut. Ins. Co.*, 604 N.W.2d at 94. Where there is no conflict, the law of the forum is applied. *Davis by Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 723 (Minn. Ct. App. 1987). Because there is no assertion that there is any conflict between the laws of Illinois and Minnesota, or that the choice of Illinois law over Minnesota law will determine the outcome of the case, the Court declines to engage in a choice-of-law analysis at this time.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Target's Motion to Dismiss [Docket No. 10] is DENIED.

Dated: July 27, 2012

                                                s/ Joan N. Ericksen
                                                JOAN N. ERICKSEN
                                                United States District Judge